23564

Jack STEWART, Respondent v. STATE CROP PEST COMMISSION, S.C. Boll Weevil Foundation, Inc. and Southeastern Boll Weevil Eradication Foundation, Inc., of whom S.C. Boll Weevil Foundation, Inc. and Southeastern Boll Weevil Eradication Foundation, Inc., are Appellants. L.N. COOK, Jr., Respondent v. STATE CROP PEST COMMISSION, S.C. Boll Weevil Foundation, Inc. and Southeastern Boll Weevil Eradication Foundation, Inc., of whom S.C. Boll Weevil Foundation, Inc. and Southeastern Boll Weevil Eradication Foundation, Inc., are Appellants. Appeal of S.C. BOLL WEEVIL FOUNDATION, INC., and Southeastern Boll Weevil Eradication Foundation, Inc.

(414 S.E. (2d) 121)

Supreme Court

*John R. McCravy, III*, Greenwood, *Robert White* and *Robert A. Tucker*, Memphis, Tenn., *for appellants.*

*J. Michael Turner*, Laurens, *for respondents.*

Submitted Nov. 21, 1991.

Decided Jan. 27, 1992.

TOAL, Justice:

This appeal arises from the circuit court's denial of defendants' motions to dismiss for lack of subject matter jurisdiction and failure to join United States Department of Agriculture and The Animal and Plant Health Inspection Service as indispensable parties. We affirm.

## FACTS

The plaintiffs are cotton farmers whose cotton crops were sprayed for boll weevil infestation by the Southeastern Boll Weevil Eradication Foundation, Inc., allegedly damaging plaintiff's cotton crop. The plaintiff farmers sued in circuit court for damages under S.C. Code § 46-10-60. S.C. Code § 46-10-60 allows a party whose property is destroyed or ordered to be treated by the state to bring an action for damages in state court for the county in which he resides or where the property was located.

The defendants' moved under SCRCP 12(b)(1) to dismiss the action claiming that state court did not have subject matter jurisdiction of the action because they were *de facto* federal employees. The defendants also moved under SCRCP 12(b)(7) to dismiss the action for failure to join the United States Department of Agriculture ("USDA") and the Animal and Plant Health Inspection Service as indispensable parties under SCRCP 19.

The USDA was authorized by Congress to "carry out programs to destroy and eliminate cotton boll weevils in infested

areas of the United States." 7 U.S.C. § 1444a(d). 7 U.S.C. § 148 authorizes the Secretary of Agriculture to cooperate with the states concerned and directs that the "State or local agency shall be responsible for the authority necessary to carry out the operations or measures on all lands and properties within the . . . State." The Animal and Plant Health Inspection Service ("APHIS") is the branch of the USDA which oversees the boll weevil eradication program.

In order to participate in the federal program, South Carolina passed the South Carolina Boll Weevil Eradication Act, S.C. Code Ann. §§ 46-10-10 *et seq.* (1976). The Act created the State Crop Pest Commission and authorizes the Commission to cooperate with the United States and other state agencies in implementing the program. The Southeastern Boll Weevil Eradication Foundation ("Foundation") is an organization of the southeastern states to facilitate regional boll weevil eradication authorized under each participating state's Boll Weevil Eradication Act.

The Foundation entered into a cooperative agreement with APHIS. The agreement stated, among other things, that the Foundation was to "provide qualified personnel necessary to accomplish survey, control, and regulatory activities described in the work plan. Provide other services (*e.g.* administrative) as may be required to support program activities." APHIS agreed to "assist the Foundation in selecting qualified candidates for employment. The Service [APHIS] may recommend that a Foundation employee be suspended for just cause regarding conduct or performance pending a review by the Foundation." The following terms were by mutual agreement:

> The individuals responsible for this work will be under the general program direction of the Service [APHIS] and/or the Foundation. Special training in carrying out the assignment will be provided by the Service [APHIS] when mutually deemed necessary and the Foundation, its Board of Directors, or its members are considered exempt of any liability or suit which may arise from any action or activity initiated by the Service [APHIS], consistent with its program obligations. The Service [APHIS] is liable only to the extent that compensation is available pursuant to the Federal Tort Claims Act, 28 U.S.C. 2761 [sic] *et seq., except* in

the case that the liability arises from negligent or deliberate acts of persons by or for the Foundation. (Emphasis added).

The work plan required the Foundation to "[e]mploy permanent and temporary field, administrative and other personnel to accomplish program function. Field supervisors shall meet the basic standards for a GS-5 Plant Protection Technician. Issue contracts for aerial application and purchase pesticide and any other materials or services needed to operate the program." APHIS will "[s]taff headquarters and field offices with full-time personnel to manage and supervise field operations." APHIS further agreed to "[p]rovide vehicles, spray equipment and other such capitalized equipment necessary to conduct the program."

Under this agreement and work plan, the Foundation's field supervisor contracted with the aerial sprayer to spray the plaintiff's cotton crops.

## LAW/ANALYSIS

The defendants claim to be *de facto* federal employees so as to give the federal district court exclusive jurisdiction over any tort claim arising out of the federal employment. The Tort Claims Procedure Act, 28 U.S.C. § 2671 (1965 & Supp. 1991), defines federal agency and federal employee as follows:

As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.

"Employee of the government" includes officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

Whether one is a federal employee is a matter of federal law. *See Wollman v. Gross*, 484 F. Supp. 598 (D.S.D. 1980), *aff'd.* 637 F. (2d) 544 (8th Cir.), *reh'g denied* 646 F. (2d) 1306 (8th Cir. 1981), *cert. denied* 454 U.S. 893, 102 S. Ct. 389, 70 L. Ed. (2d) 207. In determining the status of a federal employee, courts have generally looked to the amount of day to day control exercised by the government over the employee. *See Jennings v. U.S.*, 530 F. Supp. 40 (D.D.C. 1981). A review of the cases, however, reveals varying results.[1] The defendants, here, claim that the exclusiveness of remedy provisions of 28 U.S.C. 2679(b) (1965 & Supp. 1991) apply to them.

In 1988, Congress passed The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the "Westfall" legislation, which amended 28 U.S.C. 2679. The Westfall legislation was passed in response to *Westfall v. Erwin*, 484 U.S. 292, 108 S. Ct. 580, 98 L. Ed. (2d) 619 (1988). The purpose of the Westfall legislation was twofold. First, the legislation provided for absolute immunity of federal employ-

---

[1] In *Maryland ex. rel. Levin v. United States*, 381 U.S. 41, 85 S. Ct. 1293, 14 L. Ed. (2d) 205 (1965), the United States Supreme Court granted certiorari to resolve a split in the circuits on the issue of whether a Maryland National Guard pilot flying a United States owned aircraft was a federal employee. In *Heil v. United States*, 449 F. (2d) 124 (5th Cir. 1971), the plaintiff sued under the Federal Torts Claims Act for damages to his business when DDT was sprayed on the premises pursuant to a federal program to eradicate mosquitoes. The State of Texas actually did the spraying pursuant to a contract with the United States Public Health Service. All equipment used was federal and the program was subject to federal regulation. However, the Fifth Circuit found that filing a claim with the State Department of Health, the department that actually did the spraying, was insufficient to satisfy the administrative requirements of 28 U.S.C. 2675. In *Shippey v. United States*, 451 F. (2d) 184 (5th Cir. 1971), plaintiff was the widow of an inspector for a Federal-State inspection service who was killed in an automobile accident. The car was a federally owned car driven by a coworker. The Fifth Circuit Court found numerous indicia of federal employment, including: licensing of inspectors; setting inspection standards; implications from provisions in inspector's handbook; federal supervisor; statement of Congressional policy; clearinghouse for employment; and the power to suspend and revoke inspectors' licenses. Nevertheless, the inspectors were determined not to be federal employees. However, in *Witt v. United States*, 462 F. (2d) 1261 (2nd Cir. 1972), an employee of a contractor who contracted to clean the stables at a federal military base was found to be a federal employee acting within the scope of federal employment when a volunteer federal prisoner was injured due to his negligence. However, in *Thompson v. Dilger*, 696 F. Supp. 1071 (E.D. Va. 1988), the district court recognized that *Witt* was effectively overruled by *Logue v. United States*, 412 U.S. 521, 93 S. Ct. 2215, 37 L. Ed. (2d) 121 (1973).

ees for common law torts committed in the scope of their employment by providing a mechanism for substituting the United States as the defendant. Secondly, the legislation sought to provide an injured plaintiff with a means of obtaining judgment against the United States where warranted. *See* 134 Cong. Rec. S15,599-15,600 (daily ed. Oct. 12, 1988) (statement of Sen. Grassley).

The Tort Claims Procedure Act, 28 U.S.C. § 2679(c), directs the United States Attorney General to defend any federal employee in any court for torts committed in the scope of their employment. The same section requires that the federal employee deliver all process to his superior and the superior is directed to deliver the same to the Attorney General.

The Attorney General is then to certify that the suit is against a federal employee who was acting within the scope of employment. The amendments to 28 U.S.C. § 2679(d) provide that once the Attorney General has certified the case, the case is to be removed from state court to federal district court and the United States is substituted for the federal employee as the defendant. Thus, the Attorney General's certification is not reviewable by the state court. 28 U.S.C. § 2679(d)(2) (Supp. 1991). Certification is, however, reviewable by the federal district court. *Id.* § 2679(d)(3). If the district court finds that the certification was improper, either because the "employee" was not a federal employee or because the incident did not occur within the scope of federal employment, the case is remanded to the state court. *Id.* If, however, the district court determines that certification was proper, then the case proceeds under the Federal Torts Claims Act, 28 U.S.C. § 1346(b) (1976) with the United States as the defendant. 28 U.S.C. § 2679(d). Generally, when the plaintiff sues a federal employee individually in state court, the plaintiff will not have complied with the administrative procedure required to claim against the United States. *See* Anderson and Pellett, *Personal Civil Liability for Federal Employees and Their Representation by the Department of Justice in the Aftermath of the Westfall Legislation—An Introduction for the Base Judge Advocate*, 33 A.F.L. Rev. 19, 27 (1990). In order to meet one of the purposes of the Act, to fairly compensate injured plaintiffs, the amendments provide that in such circumstances the plaintiff has sixty days after removal to federal court to com-

ply with the administrative procedures under the Act. 28 U.S.C. § 2679(d)(5).

The defendants in the case at bar have not sought certification from the United States Attorney General. Yet, they ask this Court to declare that they were federal employees acting within the scope of their employment when plaintiff's injuries occurred. If we were to decide that the South Carolina courts lack subject matter jurisdiction in cases such as this, federal employees could simply ignore state process and then collaterally attack the judgment. Thus, the defendant would effectively thwart one of the purposes of the Westfall legislation of providing an effective remedy for the plaintiff.

The defendants claim that 28 U.S.C. § 2679(c)-(d) is unavailable to them because they are corporations. The defendants cite no case for this proposition. In *Kitchens v. U.S.*, 741 F. Supp. 182 (D. Alaska 1989), the district court held that certification and removal were proper in a medical malpractice action brought against Norton Sound Health Corporation. We find no merit in defendants' claim that 28 U.S.C. § 2679(c)-(d) is not applicable to corporations.

Therefore, we hold in situations such as this where the defendant claims to be a *de facto* federal employee within the meaning of 28 U.S.C. § 2671 (1965 and Supp. 1991) so as to come under the Federal Torts Claims Act, 28 U.S.C. § 1346(b) (1976), the federal employee defendant must comply with 28 U.S.C. § 2679 and obtain Attorney General certification in order to defeat state court subject matter jurisdiction.

Finally, the defendants claim that USDA and APHIS are indispensable parties and that failure to join USDA and APHIS requires dismissal of the action. Rule 19(b) of the South Carolina Rules of Civil Procedure provides the considerations for determining if the suit must be dismissed because an indispensable party cannot be joined. However, if the party is not indispensable under Rule 19(a), then the considerations listed in SCRCP 19(b) are never reached. In order to be an indispensable party, the action must (1) not afford complete relief among those already parties, or (2) impair or impede the absent parties' ability to protect its interest, or (3) leave parties already in the suit subject to substantial risk of incurring multiple or inconsistent obligations by reason of the absent party not being joined. The plaintiffs here are claiming

violation of the South Carolina Boll Weevil Eradication Act, S.C. Code § 46-10-10 *et seq.* The defendants are corporations authorized to operate in South Carolina under the South Carolina Boll Weevil Eradication Act. The defendants claim that by not joining USDA and APHIS, the Federal Boll Weevil Eradication Program is at risk. The federal legislation authorizing the Secretary of Agriculture to control inspections requires the local agency be responsible for the authority necessary to carry out the operations or measures on lands within the state or foreign country. 7 U.S.C. § 148. By these terms, Congress required the states to implement legislation in order to participate in the program. It is, therefore, not the federal authority or program that is challenged, but the actions authorized by the State of South Carolina that are challenged in this lawsuit. Thus, the USDA and APHIS are not affected. We affirm the decision of the circuit court.

Affirmed.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.