# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 19, 2012

No. 12-40404
Summary Calendar

Lyle W. Cayce
Clerk

BENJIE F. JOHNSON; DERWIN O. JOHNSON,

Plaintiffs-Appellants

v.

UNITED STATES OF AMERICA; OFFICE OF INSPECTOR GENERAL OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:10-CV-385

Before KING, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

In 2010, Benjie and Derwin Johnson filed a lawsuit against multiple defendants for allegedly unlawful acts committed against them in connection with attempts to evict them from a government-subsidized housing complex. Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the United States and the Office of Inspector General of the United States Department of

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 12-40404

Housing and Urban Development—along with other governmental entities also named as defendants—moved to dismiss the claims advanced against them. The district court granted the motion and the Johnsons now appeal. For the reasons discussed below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2007, Benjie and Derwin Johnson ("Appellants" or "the Johnsons") applied for federally-assisted housing at Pineview Apartments ("Pineview") in Jasper, Texas. Benjie Johnson completed and signed Pineview's "Application for Rental" and listed himself as "Head of Household."[1] The only income disclosed on the application was "SSI," supplemental security income. In response to the question "[h]ave any criminal charges or complaints ever been filed against you for actions against people or property," Benjie Johnson marked "no" on the application.

As a privately owned and for-profit housing project, Pineview received payments from the United States Department of Housing and Urban Development ("HUD") for providing housing to eligible low-income tenants. *See* 42 U.S.C. § 1437f(a). In May 2008, Pineview initiated eviction proceedings against Appellants by reporting to HUD that Appellants had not complied with Pineview and HUD requirements for obtaining subsidized housing. HUD referred the matter to its Office of Inspector General ("HUD-OIG"), which assigned the case to special agent Louis Chang. During the course of its investigation, HUD-OIG determined that Benjie Johnson failed to disclose on his rental application two prior felony convictions, as well as an additional source of income beyond SSI. Accordingly, HUD-OIG recommended to Pineview that it consider terminating Appellants' housing assistance.

---

[1] Derwin Johnson, Benjie's mentally disabled son, was listed on the bottom of the application as a "co-applicant."

No. 12-40404

The results of the HUD-OIG investigation also were provided to the local district attorney's office. On the basis of HUD-OIG's report, Benjie Johnson subsequently was arrested pursuant to a warrant issued by the Texas Department of Corrections Parole Division, which asserted that Benjie had violated the terms, rules, or conditions of his parole by securing the execution of his rental application by deception. Although a grand jury returned an indictment against Benjie Johnson, the case later was dismissed at the district attorney's behest.

On July 6, 2010, Appellants filed a lawsuit against multiple defendants, which, for the sake of convenience, may be grouped into two categories: the first included the United States, HUD's Secretary, HUD-OIG, and Louis Chang (collectively, the "Governmental Defendants"); the second included persons and entities associated with Pineview (collectively, the "Pineview Defendants").[2] Generally, Appellants' claims centered on allegations that the defendants engaged in practices that violated HUD policies, which led to the unlawful denial of Appellants' housing subsidy, and the wrongful arrest, imprisonment, and indictment of Benjie Johnson. After extensive motion practice, the Governmental Defendants moved for dismissal of all claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court granted the motion on August 11, 2011.

The Johnsons now appeal, alleging only that the district court erred in dismissing the United States and HUD-OIG from the lawsuit.[3] Accordingly, our review is limited to claims dismissed against those two defendants.

---

[2] Pineview had by that time changed its name to Hope Village Apartments, which was one of the named defendants in the lower court.

[3] That Appellants appeal only as to the United States and HUD-OIG is confirmed by Appellants identification of only these two entities as Appellees. Moreover, the United States and HUD-OIG are the only entities listed on Appellants' Certificate of Interested Persons, and are the only named parties in Appellants' Notice of Appeal.

No. 12-40404

## II. STANDARD OF REVIEW

We review de novo a district court's dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1). *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir. 1995). "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

We also "review de novo a district court's dismissal of a complaint under Rule 12(b)(6)." *Frame v. City of Arlington*, 657 F.3d 215, 222 (5th Cir. 2011) (en banc). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "All well-pleaded facts in the complaint are accepted as true and viewed in the light most favorable to the nonmovant." *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012).

## III. ANALYSIS

### A.    The Claims at Issue on Appeal

In their third amended complaint, Appellants asserted the following causes of action: (1) violation of 12 U.S.C. § 1715z-1b(b)(2) ("claim one"); (2) attempted wrongful eviction ("claim two"); (3) slander ("claim three"); (4) breach of contract ("claim four"); (5) defamation and disparagement ("claim five"); (6) civil conspiracy ("claim six"); (7) violation of the Administrative Procedure Act ("APA") ("claim seven"); (8) claims pursuant to the Declaratory Judgment Act

4

No. 12-40404

("claim eight"); (9) a *Bivens* claim against Louis Chang ("claim nine");[4] (10) violation of due process ("claim ten"); (11) violation of the prohibition against cruel and unusual punishment ("claim eleven"); and (12) false imprisonment under Texas law ("claim twelve"). In addressing the Governmental Defendants' motion to dismiss, the district court noted that, although Appellants' complaint was "not a model of clarity," the complaint and Appellants' subsequent pleadings evidenced that Appellants advanced: (1) claims two through six against the Pineview Defendants; (2) claims one, seven, and eight against certain of the Governmental Defendants, including HUD-OIG, but excluding Louis Chang; and (3) claims nine through twelve against Louis Chang.[5] The district court also emphasized, however, that it previously had granted the Governmental Defendants' motion to substitute the United States for Louis Chang as to claim twelve.

Accordingly, because Appellants only appeal the district court's judgment as it pertains to the United States and HUD-OIG, our review is limited to the district court's dismissal of claims one, seven, and eight—as those claims were brought expressly against HUD-OIG—and claim twelve, which was advanced against the United States by virtue of its substitution for Louis Chang.

---

[4] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[5] In a footnote to their appellate brief, the Johnsons express disagreement with this treatment of their claims. In particular, they state that the district court improperly concluded that claims two through six were not advanced against the United States or HUD-OIG. This conclusion, however, was based on Appellants' own characterizations. In their response to the Governmental Defendants' motion to dismiss, for instance, Appellants explicitly stated that "[w]ith respect to causes of action two, three, four, five, six, and twelve, these actions are not brought against HUD or HUD-OIG." Similarly, a motion Appellants filed for a protective order explicitly stated that they were suing only the Pineview Defendants for claims two through six, and various of the Governmental Defendants for claims one, seven, eight, nine, ten, eleven, and twelve. We therefore agree with the district court's categorization of Appellants' claims, as set forth above.

No. 12-40404

These claims may briefly be summarized as follows. In claim one, Appellants allege that HUD-OIG acted in concert with the Pineview Defendants "to wrongfully evict, imprison, and withhold rent subsidies properly due under [their] Section 8 housing agreement" and actually "assisted in the removal and withholding of [Appellants'] subsidies." The complaint states that these actions violated 12 U.S.C. § 1715z-1b(b)(2), which provides that the Secretary of HUD "shall assure that . . . project owners not interfere with the efforts of tenants to obtain rent subsidies or other public assistance." In claim seven, Appellants assert that HUD-OIG violated the APA by "engag[ing] in acts or omissions which were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Appellants' eighth claim maintains that HUD-OIG wrongfully prohibited Appellants "from receiving rent subsidies they are rightfully entitled to collect." Appellants therefore seek relief under the Declaratory Judgment Act that would require HUD-OIG to approve and pay future rent subsidies on Appellants' behalf and prevent their future eviction. Finally, claim twelve alleges that Chang's actions caused Benjie Johnson's false imprisonment.

The district court granted the Governmental Defendants' motion for dismissal of these claims. The court's order expressly stated that claims one and seven were dismissed "on sovereign immunity grounds," claim eight was "dismissed for lack of jurisdiction," and claim twelve was dismissed because Appellants specifically stated they did not allege the claim against the United States, but only against Louis Chang, who already had been dismissed from the claim by virtue of the United States' substitution.

On appeal, the Johnsons assign several errors to the district court. First, they assert that the court erred in dismissing claim one on sovereign immunity grounds because, they contend, they established a waiver of immunity for claims brought pursuant to 12 U.S.C. § 1715z-1b(b)(2). Second, Appellants maintain that the court improperly dismissed claim seven, advanced under the APA,

6

No. 12-40404

because they pleaded non-monetary relief and established a waiver of sovereign immunity. Third, they allege that the district court erred in dismissing claim eight, pursued under the Declaratory Judgment Act, because they established jurisdiction for their claim. Fourth, Appellants suggest that claim twelve should not have been dismissed because, contrary to the lower court's conclusion, the United States was a named defendant in connection with that claim. Finally, they maintain that the district court did not properly specify and apply the standards for a motion to dismiss. Each of these challenges will be addressed in turn.

**B.    Appellants' 12 U.S.C. § 1715z-1b(b)(2) Claim (Claim One)**

As mentioned above, Appellants contend that HUD-OIG's actions violated 12 U.S.C. § 1715z-1b(b)(2), which provides that the Secretary of HUD "shall assure that . . . project owners not interfere with the efforts of tenants to obtain rent subsidies or other public assistance." The district court dismissed this claim after concluding that Appellants had not demonstrated a waiver of HUD-OIG's sovereign immunity. We agree.

"The constitution contemplates that, except as authorized by Congress, the federal government and its agencies are immune from suit." *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (en banc). "Absent an express waiver of federal immunity by Congress," the federal government and its agencies may not be sued. *Id.* at 252. A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969). Further, "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). "[P]laintiffs bear the burden of showing Congress's unequivocal waiver of sovereign immunity." *Spotts v. United States*, 613 F.3d 559, 568 (5th Cir. 2010).

7

No. 12-40404

Appellants argue that 12 U.S.C. § 1702 waives sovereign immunity for their 12 U.S.C. § 1715z-1b(b)(2) claim. Section 1702 provides that the Secretary of HUD "shall, in carrying out the provisions of [certain subchapters of the National Housing Act], be authorized, in his official capacity, to sue and be sued." 12 U.S.C. § 1702. Appellants contend that because section 1715z-1b(b)(2) is contained in a subchapter expressly referenced in section 1702's immunity waiver, they have met their burden of demonstrating a waiver of sovereign immunity.

Because Appellants do not appeal the district court's dismissal of this claim as to the Secretary or HUD itself, it is not clear that they have preserved it. Nevertheless, even assuming, *arguendo*, that Appellants' 12 U.S.C.§ 1715z-1b(b)(2) claim is properly before this court, previous cases interpreting section 1702's immunity waiver support our conclusion that Appellants have not demonstrated a waiver.

For example, in discussing section 1702's predecessor in *Federal Housing Administration, Region No. 4 v. Burr*, the Supreme Court stated that while the provision authorized suit against the Secretary (then known as "the Administrator"), "[t]hat does not, of course, mean that any funds or property of the United States can be held responsible for this judgment." 309 U.S. 242, 250 (1940). Rather, the Court noted, "Congress has specifically directed that all such claims against [HUD] of the type here involved shall be paid out of funds made available by [the National Housing Act]." *Id.* (citation and internal quotation marks omitted). "The result is that only those funds which have been paid over to [HUD] in accordance with [the National Housing Act] and which are in its possession, severed from Treasury funds and Treasury control, are subject to execution." *Id.*

Accordingly, we have previously held that "section 1702 is a waiver of the immunity *of HUD only*, and that the section is neither a grant of jurisdiction nor

No. 12-40404

a waiver of the United States generally." *Johnson v. Sec'y of & U.S. Dep't of Hous. & Urban Dev.*, 710 F.2d 1130, 1138 (5th Cir. 1983) (emphasis added). Thus, to the extent Appellants seek to assert their section 1715z-1b(b)(2) claim against the United States as a defendant, *Johnson* forecloses their attempt. Moreover, even in suits advanced against HUD or its Secretary, courts interpreting *Burr* have concluded that it "requires that the plaintiff establish the existence of some fund in the possession and control of HUD from which a potential judgment against the Secretary may be recovered." *Thomas v. Pierce*, 662 F. Supp. 519, 526 (D. Kan. 1987); *see also Johnson*, 710 F.2d at 1138. In other words, a plaintiff must demonstrate that "the judgment can be paid out of funds appropriated under the National Housing Act and in the control or subject to the discretion of the Secretary." *Johnson*, 710 F.2d at 1138.

Here, as the district court explained, Appellants have entirely failed to allege the existence of such funds. In challenging the district court's order, Appellants do little more than suggest that the existence of such funds should be treated as a disputed fact. Their argument neglects, however, that they bear the burden of showing an unequivocal waiver of sovereign immunity. Because Appellants have not satisfied this burden, the district court properly dismissed their 12 U.S.C. § 1715z-1b(b)(2) claim.[6]

## C.    Appellants' APA Claim (Claim Seven)

Appellants' complaint also argued that insofar as HUD-OIG failed to ensure that the Pineview Defendants did not interfere with Appellants' efforts to obtain rent subsides, HUD-OIG violated the APA by engaging in acts that

---

[6] Appellants assert that the district court also erred in dismissing a claim they advanced under 42 U.S.C. § 1437f, which generally authorizes HUD to make assistance payments to low-income families. The district court did no such thing, however, as Appellants did not raise such a claim in the lower court. Although Appellants contend their complaint alluded to a 42 U.S.C. § 1437f claim, it is well-settled that "if a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court." *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994).

were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The district court dismissed this claim on sovereign immunity grounds—a result we affirm.

The APA provides for judicial review of certain agency actions. *See, e.g.*, *Sierra Club v. Glickman*, 67 F.3d 90, 96 (5th Cir. 1995). However, the Act waives sovereign immunity only for actions "seeking relief other than money damages." 5 U.S.C. § 702. Here, the district court explained that Appellants sought only money damages in connection with their alleged APA violations. To wit, Appellants' complaint stated that "[a]s a direct and proximate result of these [APA-related] violations, Plaintiffs have been injured in an amount to be determined according to proof." No other non-monetary relief was referenced in the context of Appellants' APA claim.

On appeal, the Johnsons argue that the district court "misconstrued" their APA claim. In particular, they assert that although they did not plead for equitable relief specifically in connection with their APA claim, the complaint's "prayer for relief" section sufficiently indicated that Appellants were seeking both injunctive relief and money damages for that claim.

To be sure, Appellants did seek a permanent injunction that would prohibit the Governmental Defendants from engaging in certain conduct Appellants deemed objectionable. It is not clear, however, that any of the referenced conduct in the complaint's "prayer for relief" section pertained to the alleged APA violation. The best Appellants can do on this front is rely on their request that the court enjoin HUD-OIG from "failing to prevent [the Pineview Defendants] from interfering with efforts of Plaintiffs to obtain rent subsidies or other public assistance." This, however, is not a cognizable request for equitable relief under the APA, as it would require us unreasonably to assume that all future efforts by HUD-OIG and the Pineview Defendants to monitor, investigate, or act on Appellants' attempts to obtain public assistance necessarily would be

unlawful.  As we previously have explained, expanding injunctive relief to these bounds essentially would require us to issue an advisory opinion—an undertaking in which we may not engage.  *See John Doe #1 v. Veneman*, 380 F.3d 807, 819 (5th Cir. 2004).

Accordingly, we agree with the district court that Appellants' complaint requested only monetary damages for HUD-OIG's alleged APA violation.  As such, Appellants' APA claim against the defendants is barred by sovereign immunity.

## D.    Appellants' Declaratory Judgment Act Claim (Claim Eight)

As mentioned above, Appellants also sought an order under the Declaratory Judgment Act requiring, *inter alia*, HUD-OIG to approve and pay future rent subsidies on Appellants' behalf.  *See* 28 U.S.C. §§ 2201, 2202.  In addressing this claim, the district court relied on our opinion in *Jones v. Alexander*, in which we explained that "[t]he Declaratory Judgment Act is not an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present."  609 F.2d 778, 781 (5th Cir. 1980).  Because Appellants failed to demonstrate any other jurisdictional basis for their requested declaratory relief, the court dismissed Appellants' claim.

In challenging the district court's dismissal, Appellants argue that they established jurisdiction under 12 U.S.C. § 1702.[7]  Nevertheless, for the reasons already detailed above, Appellants still have not demonstrated a waiver of sovereign immunity in connection with section 1702.  Accordingly, we agree with the district court that Appellants' Declaratory Judgment Act claim must be dismissed.

---

[7] Appellants also assert that 42 U.S.C. § 1404a supplies jurisdiction for their Declaratory Judgment Act claim.  As relevant, section 1404a provides that HUD's Secretary may sue and be sued with respect to certain functions carried out under the Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*  As explained in an earlier footnote, however, Appellants have not preserved their claims associated with this Act.  *See Mijalis*, 15 F.3d at 1327.

## E.    Appellants' False Imprisonment Claim (Claim Twelve)

In their third amended complaint, Appellants asserted a false imprisonment claim, brought under Texas law, against Chang, HUD, and HUD-OIG.   In their response to the Governmental Defendants' motion to dismiss, however, Appellants expressly stated that this claim was "not brought against HUD or HUD-OIG."  Indeed, Appellants previously had insisted that they were pursuing their false imprisonment claim only against Chang.  Accordingly, the district court dismissed the claim based on Appellants' failure to properly name the United States as a defendant, as required by the Federal Tort Claims Act ("FTCA").  *See* 28 U.S.C. § 1346(b)(1); *McLaurin v. United States*, 392 F.3d 774, 777 (5th Cir. 2004).

On appeal, Appellants contend that the district court erred in concluding that the United States was not a properly named defendant.  They suggest that because the district court granted the Governmental Defendants' motion to substitute the United States as a defendant for Chang, the United States was fully aware that it was the party against whom Appellants advanced their false imprisonment claim.  Appellants cite no authority for their assertion and their argument appears to be contrary to the position they maintained at trial. Nonetheless, even if we assume it to be accurate, the district court still properly dismissed Appellants' false imprisonment claim for lack of subject matter jurisdiction.

Because Appellants' false imprisonment claim alleged a violation of state rather than federal law, Appellants' action generally is cognizable under the FTCA.  *See FDIC v. Meyer*, 510 U.S. 471, 476-78 (1994); *McLaurin*, 392 F.3d at 777 ("Section 2679 of the FTCA provides that a suit against the United States is the exclusive remedy for damages for injury or loss of property 'resulting from the negligent or wrongful conduct of any employee of the Government while acting within the scope of his office or employment.'" (quoting 28 U.S.C. §

No. 12-40404

2679(b)(1))). As a result, Appellants were required to comply with the FTCA's other provisions for pursuing a suit against the government. One such requirement is that a plaintiff must exhaust all available administrative remedies before he may pursue an action for money damages against the United States. 28 U.S.C. § 2675(a). As we previously have explained, "[e]xhaustion of administrative remedies is a jurisdictional prerequisite to suit under the [FTCA], and absent compliance with the statute's requirement the district court [is] without jurisdiction." *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989) (per curiam), *cert. denied*, 493 U.S. 1083 (1990).

Here, Appellants did not pursue—much less exhaust—any administrative remedies in connection with their false imprisonment claim. Accordingly, whether because the United States was not properly named as a party, or because Appellants failed to comply with the FTCA's exhaustion requirements, the district court properly dismissed Appellants' claim for lack of jurisdiction.

**F.     The District Court Applied the Correct Dismissal Standards**

Finally, Appellants allege that the district court failed to indicate the grounds on which it dismissed their claims and applied incorrect legal standards. Although their argument is not entirely clear, Appellants appear to fault the lower court for failing to specify in its order whether the court dismissed their claims pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, or pursuant to 12(b)(6), for failure to state claim upon which relief could be granted.[8] Appellants also suggest that the district court improperly resolved disputed facts.

---

[8] Appellants evidently raise this argument given the principle that a "court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming*, 281 F.3d at 161.

13

No. 12-40404

First, we reject Appellants' assertion that the district court did not specify the standard under which it dismissed the claims at issue. As we already have explained, the district court's order explicitly indicated that the court dismissed Appellants' claims under 12 U.S.C. § 1715z-1b(b)(2) and the APA on sovereign immunity grounds. Because "[s]overeign immunity is jurisdictional in nature," *Meyer*, 510 U.S. at 475, it is clear that those claims were dismissed under Rule 12(b)(1). Likewise, the court expressly stated that Appellants' Declaratory Judgment Act claim was dismissed "for lack of jurisdiction," thereby indicating that it too was dismissed pursuant to Rule 12(b)(1). The only cause of action as to which there could be any doubt is Appellants' false imprisonment claim. Nonetheless, for the reasons we have just discussed, it is similarly clear that this claim also was dismissed for lack of jurisdiction under Rule 12(b)(1).

We similarly hold Appellants' argument that the district court improperly resolved disputed facts to be without merit. A review of the record demonstrates that the district court granted the Governmental Defendants' motion to dismiss based solely on its review of Appellants' complaint. What Appellants really complain of is the district court's refusal to treat facts that they did not plead as facts that were disputed. Nevertheless, in making this argument, Appellants ignore that they bore the burden of proving jurisdiction in response to the Governmental Defendants' Rule 12(b)(1) motion. *See Ramming*, 281 F.3d at 161. That Appellants failed to carry this burden does not constitute judicial error.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

14